# COURT OF APPEALS OF VIRGINIA

Present: Judges Huff,* AtLee and Ortiz
Argued at Fairfax, Virginia


JOSE ROBERTO GOMEZ CONTRERAS

v.     Record No. 1156-23-4[1]

COMMONWEALTH OF VIRGINIA                    MEMORANDUM OPINION** BY
                                              JUDGE GLEN A. HUFF
JOSE ROBERTO GOMEZ CONTRERAS                  FEBRUARY 18, 2025

v.     Record No. 1471-23-4

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
James C. Clark, Judge

Muhammad Elsayed (Elsayed Law PLLC, on briefs), for appellant.

Kimberly A. Hackbarth, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following a three-day jury trial in the Circuit Court of the City of Alexandria (the "trial

court"), Jose Roberto Gomez Contreras ("appellant") was convicted on January 11, 2023, of one

count of rape (Code § 18.2-61(A)(i)) and two counts of indecent liberties of a child under the age of

18 while maintaining a custodial or supervisory relationship (Code § 18.2-370.1(A)(vi)). After

denying appellant's post-trial motions, the trial court sentenced appellant to 20 years' incarceration

---

* Judge Huff prepared and the Court adopted the opinion in this case prior to the effective date of his retirement on December 31, 2024.

[1] Appellant filed notices of appeal on July 6, 2023, and August 23, 2023. This Court granted his subsequent motion to consolidate the appeals on November 30, 2023, for purposes of briefing and argument.

** This opinion is not designated for publication. *See* Code § 17.1-413(A).

with 7 years suspended on the rape conviction, and 5 years' incarceration, all suspended, on each conviction for taking indecent liberties.

On appeal, appellant raises numerous challenges to the trial court's rulings on matters of sufficiency, evidence admission and preclusion, and grounds for a new trial. Finding no merit to any of appellant's claims, this Court affirms the judgment below.

BACKGROUND[2]

K.I.C. was born in El Salvador to Maritza Contreras, appellant's sister.[3] When K.I.C. was two years old, her mother left El Salvador and travelled to the United States. K.I.C. remained in El Salvador under the care of her maternal grandmother. Although her uncle—appellant—lived in the United States during that time, he paid for K.I.C.'s education in San Miguel, El Salvador, and hired a personal guard for her. Maritza returned to El Salvador when K.I.C. was 14 years old, leaving behind a younger daughter, R.I., in Alexandria, Virginia.[4]

In October 2019, K.I.C.'s mother again left for the United States, this time bringing K.I.C. and a family friend with her. Even though she was 15 years old at that time, K.I.C. believed she "didn't have an option" about following her mother's instructions. They crossed the border into Texas in November 2019. Appellant, described by K.I.C. as missing one leg but not needing

---

[2] The Court reviews the evidence in the "light most favorable to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, this Court "regard[s] as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *McGowan v. Commonwealth*, 72 Va. App. 513, 516 (2020).

Parts of the record in this case were sealed. "[T]his appeal requires unsealing certain portions to resolve the issues raised by the parties." *Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 283 n.1 (2022). We unseal only the facts mentioned in this opinion; the rest of the record remains sealed. *Id.*

[3] The victim is identified herein by her initials to protect her privacy. She was 19 years old at the time of appellant's trial.

[4] R.I. was 14 years old at the time of appellant's trial.

assistance to move around, picked them up at a McDonald's in Texas and drove them to a hotel for the night.[5]  At the hotel, appellant stayed in the same room as K.I.C. and her mother, both of whom slept in separate beds.

During the night, appellant got into K.I.C.'s bed and touched her vagina and breasts with his hands.  When she started crying, appellant "got angry and . . . moved [back] to his bed."  Despite being awake during this incident, K.I.C.'s mother said nothing.  K.I.C. did not seek help from anyone else because she "didn't know anybody" in the United States and appellant had taken away her cell phone that evening.  The next day, appellant moved them to a different hotel, where they stayed for approximately one month.

On the first night in the new hotel, in a room with only one bed, both appellant and Maritza told K.I.C. that she "would never see [her] grandmother again" if she didn't do what appellant wanted.  Appellant then began to touch K.I.C.'s vagina and breasts.  At K.I.C.'s protests, Maritza took K.I.C. into the bathroom and told K.I.C. "to do it for her, the sake of her."  She escorted K.I.C. back to bed and positioned her in the middle of the bed while appellant "started hugging [K.I.C.] from behind" and touching her breasts.  Together, appellant and Maritza removed K.I.C.'s clothes.  Appellant then raped K.I.C. by inserting his penis into her vagina against her will, eventually "spill[ing] his semen[] . . . [o]utside of [K.I.C.'s] vagina."

Sometime later, appellant left for a week before returning to Texas with R.I.  They all stayed in a hotel room with three beds, during which time appellant did not touch K.I.C.  After R.I.'s birthday on November 20, 2019, appellant moved the family to a house in South Carolina.  He and Maritza shared a bedroom while K.I.C. and R.I. each had their own rooms.

---

[5] During her cross-examination at trial, K.I.C. agreed with the defense attorney's statement that appellant "uses crutches because he's missing a leg[.]"

Two days after they arrived in South Carolina, appellant starting sexually abusing K.I.C. again. For the next month-and-a-half, appellant sexually abused K.I.C. more than ten times. This routinely started with appellant and Maritza calling K.I.C. into their shared bedroom to "talk." Once K.I.C. entered, however, they told her that she "already knew why [she] was going to the bedroom." Appellant would then begin touching K.I.C.'s breasts and vagina with his hands before inserting his penis into her vagina. Although K.I.C.'s mother did not actively participate in the sexual abuse, she remained in the bedroom while it happened and ignored her daughter's crying.

Appellant's threats and K.I.C.'s isolation in a new country prevented K.I.C. from seeking help.[6] In addition to worrying that she would never see her grandmother again, K.I.C. was also concerned with her sister's wellbeing. Before K.I.C. had travelled to the United States, R.I. had visited her and their grandmother in El Salvador, during which time R.I. told K.I.C. that appellant had "abused her [starting] from the time she was eight years old."

On December 23, 2019, the family traveled to Alexandria, Virginia, to see K.I.C.'s grandmother, who was visiting from El Salvador. K.I.C. turned 16 years old on December 31, 2019. She returned to South Carolina with her mother, her sister, and appellant on January 2, 2020. Over the next few weeks, appellant resumed his routine of sexually abusing K.I.C. in his bedroom while Maritza watched. On each of those occasions, R.I. remained in her separate bedroom.

Towards the end of January 2020, appellant moved the family to a two-bedroom apartment in Alexandria, Virginia. K.I.C. and R.I. shared one bedroom; appellant and Maritza shared the other bedroom. Starting in February 2020, appellant resumed his sexual abuse of K.I.C. using the same routine as when they had lived in South Carolina: calling K.I.C. into the bedroom, touching her breasts and vagina with his hands, and then putting his penis into her vagina "[f]or about 20 minutes."

---

[6] Neither appellant nor Maritza enrolled K.I.C. in school during their stay in South Carolina.

These incidents "always [occurred] at nighttime" after R.I. had fallen asleep. Whenever K.I.C. tried to resist, appellant instructed Maritza to talk to her. In those conservations, Maritza told K.I.C. that if she resisted, R.I. "would take her place." R.I. herself even told K.I.C. that she was afraid of appellant because "he would always hit her[] [a]nd he had abused her from the time she was eight years old." As "the oldest sister[,]" K.I.C. believed it was her responsibility to protect R.I., and she therefore did not refuse or report the ongoing abuse.[7] Throughout this time, appellant paid for the family's housing, food, and clothes. When Maritza started working outside the home, appellant remained with the girls and sexually assaulted K.I.C. by removing her clothes and touching her breasts and vagina.

Near the end of February 2020, appellant questioned K.I.C. about why her cell phone bill was so high. Appellant had purchased the phone for her and paid all the bills for it. While looking through the phone, appellant learned that K.I.C. had a boyfriend at her school. "[H]e got really angry and . . . pounded the table" while confronting K.I.C. about whether it was true that she had a boyfriend. He told her that she "belong[ed] to him and no one else." When K.I.C. admitted that she did have a boyfriend, appellant slapped her. He then told her to put her "mouth on his penis" if she wanted to get her cell phone back from him. K.I.C. refused and went to her bedroom where R.I. was talking to K.I.C.'s boyfriend on another cell phone. In that conversation, R.I. told K.I.C.'s boyfriend "everything" that had been going on in the home.

K.I.C.'s boyfriend subsequently notified school officials that K.I.C. was being "mistreat[ed]" at home. She confirmed his complaint and told the school officials what had been

---

[7] At trial, K.I.C. also explained that she didn't tell other members of her family about the abuse because she was afraid they would not believe her: "[T]hey never believe what I say. They think that I'm a liar. Like right now, they're on his side and they don't believe everything that I'm saying, but I know what happened."

happening to her at home. At that point, she had only been enrolled in the high school for two weeks, and appellant drove her to-and-from school each day.

Through the school's involvement, K.I.C. and R.I. were removed from the family home and placed into foster care.[8] K.I.C. also spoke to police officers and two of her cousins about the abuse she had suffered.[9] During the subsequent investigation, neither Child Protective Services (CPS) nor the Alexandria Police Department Special Victims Unit (SVU) were able to speak with appellant. He was eventually located, arrested, and extradited from Texas in June 2021, 15 months after K.I.C. reported the allegations of rape and sexual abuse.

Based on K.I.C.'s allegations, the Commonwealth indicted appellant on one count each of rape, oral sodomy, and animate object sexual penetration ("OSP"), as well as two counts of custodial indecent liberties. The conduct underlying each charge occurred between January 15, 2020, and March 1, 2020, when K.I.C. was 16 years old and lived in Virginia. The trial court granted the Commonwealth's motion *in limine* to present "evidence of the prior sexual act[s] in Texas and South Carolina between the the [sic] defendant and KIC from November 2019 to January 2020."

Before trial began on January 9, 2023, the Commonwealth nolle prossed the oral sodomy and OSP charges. Due to the language barrier, K.I.C. testified with the use of a Spanish interpreter. When questioned on cross-examination about why she never disclosed any of the alleged abuse to her grandmother, K.I.C. explained that she was afraid "it would provoke a heart attack[] [b]eacuse they always said that to me, that if we brought problems to her it could have that effect."

---

[8] It was not until the end of March 2020—approximately one month since the last time appellant had sexually assaulted her—that K.I.C. received a physical examination from a doctor. The exam was performed at the request of the social worker assigned to K.I.C. and R.I.'s case.

[9] K.I.C. spoke to Ester Maria Fuentes Gomez, a cousin who lived in the United States, and Elsa Naomi Gomez Fuentes, who lived in El Salvador.

During trial, one of K.I.C.'s cousins and a school friend confirmed that K.I.C. had disclosed the rapes and sexual abuses to them while in Alexandria. The CPS social worker testified about her first contact with K.I.C. and Maritza at the Alexandria apartment on March 3, 2020. Appellant had initially told her that Maritza was not home, and he refused to let the CPS worker into the apartment. He later relented but stayed in the room during the interview with K.I.C. and Maritza.

Both the CPS worker and the SVU detective confirmed the statements K.I.C. made during a forensic interview that took place on March 3, 2020. The detective also noted that no forensic sexual assault examination of K.I.C. was completed at that time because more than five days had elapsed since appellant last raped K.I.C.

Testifying on behalf of appellant, K.I.C.'s grandmother stated that K.I.C. had never disclosed being sexually abused by appellant, Maritza, or any other family member. She further testified that she had heard K.I.C. say the allegations against appellant were untrue and that K.I.C. "want[ed] peace." Despite having lived with appellant for months leading up to the trial, K.I.C.'s grandmother denied talking with appellant or other family members about the case. One of K.I.C.'s cousins also testified for the defense, stating that K.I.C. had previously accused a different uncle of raping her in El Salvador before eventually recanting those allegations. This testimony, however, was inconsistent with an affidavit filed in the matter.

Lastly, appellant testified on his own behalf. He stated that his sister Maritza informed him in 2019 that she was returning to the United States; he agreed to help financially, as he was already sending money to her in El Salvador. He explained that Maritza planned to "com[e] illegally through Mexico" with K.I.C., while his mother would fly into the United States on a visa with R.I. Appellant said that Maritza called him after she and K.I.C. crossed the border to ask him to come get her because she had twisted her ankle. He then testified that someone was charging "[$]6[,]000 for [their] release" and he "had to pay another [$]3[,]000 to get them out of there." Afterwards, he

- 7 -

took them to a hotel, bought them clothes, shoes, groceries, gave them cash, and took them out for meals before returning to South Carolina.

Appellant further testified that he made "one trip a week" between South Carolina to Texas, paid for the family's expenses, and even brought R.I. back with him to Texas in early November 2019. He subsequently rented a house in South Carolina where Maritza, K.I.C., and R.I. stayed instead of living at appellant's other in-state home with his wife.

In early 2020, appellant moved K.I.C., R.I., and Maritza to Virginia. He secured, furnished, and paid for an apartment to share, testifying that he only stayed there "four or five days" each time he visited from South Carolina. Despite claiming that K.I.C. and R.I. "would stay home[] . . . on their own all the time[]" when Maritza worked night shifts and that he "never spent five minutes alone" with the girls, appellant admitted to sleeping overnight at the apartment when the girls lived there.

In addition to buying groceries, giving Maritza money, and driving his nieces to-and-from school in Alexandria, appellant also bought cell phones for R.I., K.I.C., and Maritza. The phones were registered in his name, and he paid the monthly bills. Appellant testified that K.I.C.'s monthly phone bills increased in Alexandria, leading him to discover that she "was calling her friends at her private school [in El Salvador], because she was alone, [and said] that she needed to talk to somebody. That's why the [phone] bill was so high[.]" He then claimed that it was Maritza who took the phone away from K.I.C. when the February 2020 bill was even higher. Although he insisted it was Maritza who looked through the phone and discovered that K.I.C. was calling a male friend in El Salvador, appellant testified to seeing a picture of K.I.C.'s breasts on the phone.

Appellant testified that he was at the Alexandria apartment on March 3, 2020, when the CPS worker came to speak with K.I.C. and Maritza, but he claimed he let her inside as soon as she

identified herself as a social worker. He further claimed that he was already packed to go back to South Carolina that day and that he left for the pre-planned trip after the CPS worker arrived.

Finally, appellant affirmed that he was a convicted felon; first for bank fraud in 2007, and then for a fraudulent check "from [his] company" in 2017 or 2018. He denied, however, receiving any telephone calls from CPS or the SVU detective in 2020, and he claimed that the Alexandria Police Department told him there were no outstanding arrest warrants when he called to check. As to K.I.C.'s allegations of rape and sexual abuse, appellant denied any improper sexual activity with either K.I.C. or R.I.

At the conclusion of the Commonwealth's case, and again at the end of the trial, appellant moved to strike for insufficient evidence; both motions were denied. The jury returned guilty verdicts on the rape charge and for the two counts of taking indecent liberties with a minor by sexually abusing K.I.C. and by proposing an act of fellatio while maintaining a custodial relationship with her. Appellant filed motions to set aside the verdict for insufficient evidence and to continue sentencing. The trial court denied the motions.

At appellant's sentencing hearing, Ms. Rebecca Trusler—who identified herself as K.I.C.'s aunt—read K.I.C.'s victim impact statement aloud, but testified on cross that she didn't know who wrote it. The statement included the following assertions: "[appellant] beat me, violently threaten me and abuse me"; "[t]hese crimes were done behind closed doors, even the sex trafficking"; "[a]t one point in my life, he even held a gun to my mother's head, threatening to kill her in front of me so that I could not refrain and defy his cruel and sadistic requests"; and "[he held] me down and rap[ed] me violently so that he would insert foreign objects inside of my private area." Appellant then questioned K.I.C. under oath about some of those statements.

K.I.C. explained that she dictated her statement in Spanish and had somebody help her translate it into written English. When asked about the sex trafficking statement, K.I.C. said,

"[w]ell, I mentioned that because when I was in El Salvador, nothing like this happened. They brought me here only to be hurt." The trial court ultimately sentenced appellant to a total of 30 years' incarceration with all but 13 years suspended. Appellant subsequently retained new counsel who filed a notice of appeal on July 6, 2023, as well as additional post-conviction motions to set aside the verdict and to stay the final order. Following the trial court's denial of those motions, appellant filed a second notice of appeal on August 23, 2023.

## ANALYSIS

Appellant raises nine assignments of error, which this Court addresses in three separate categories below. First, appellant asserts that the trial court erred in denying his motions to strike and his first motion to set aside the jury verdict for insufficient evidence. Second, appellant contends that the trial court erred in admitting certain hearsay testimony and in precluding him from cross-examining K.I.C. about certain statements. Third, and finally, appellant argues that the trial court erred in denying his second motion to set aside the jury verdict based on newly discovered evidence.

### Assignments of Error I and II: Sufficiency of the Evidence

In challenging the sufficiency of the evidence, appellant first argues that the trial court erred in denying his motions to strike the evidence regarding the indecent liberties charges "because the evidence failed to establish a 'custodial or supervisory' relationship" between appellant and K.I.C. He then alleges that the trial court erred in denying his first motion to set aside the verdict based on insufficient evidence for all three offenses. This Court disagrees and holds that the trial court did not err in denying appellant's motions where the evidence was sufficient to support each of his convictions.

## I. Standard of Review

When reviewing a trial court's decision concerning the sufficiency of evidence, "the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it." *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

In determining "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt[,]" this Court "consider[s] the evidence in the light most favorable to the Commonwealth[.]" *Linnon v. Commonwealth*, 287 Va. 92, 98 (2014). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

## II. The Trial Court Did Not Err in Denying Appellant's Motions to Strike

Appellant's motions to strike the evidence of the indecent liberties charges—made at the end of the Commonwealth's case-in-chief and renewed at the end of the trial—challenged only the sufficiency of the evidence to prove the necessary element of appellant having a "custodial or supervisory relationship" with K.I.C. at the time of the alleged sexual abuse. "Whether such a

relationship exists at the time of the offending conduct is a matter of fact to be determined on a case by case basis." *Sadler v. Commonwealth*, 276 Va. 762, 765 (2008).

The purpose of a motion to strike is to "challenge[] whether the evidence is sufficient to submit the case to the jury." *Linnon*, 287 Va. at 98 (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 223 (2013)). Thus, in ruling on a defendant's motion to strike, the trial court "should grant the motion only when it is conclusively apparent that [the Commonwealth] has proven no cause of action against defendant, or when it plainly appears that the trial court would be compelled to set aside any verdict found for the [Commonwealth] as being without evidence to support it." *Avent v. Commonwealth*, 279 Va. 175, 198-99 (2010) (alterations in original) (quoting *Banks v. Mario Indus.*, 274 Va. 438, 455 (2007)). "What the elements of the offense are is a question of law that [this Court] review[s] de novo." *Linnon*, 287 Va. at 98. But "[w]hether the evidence adduced [below] is sufficient to prove each of those elements is a factual finding, which will not be set aside on appeal unless it is plainly wrong." *Id.*

In rejecting appellant's motions, the trial court noted that appellant was "an adult relative[]" who resided with K.I.C. and "provided for her financially." It held that the evidence was sufficient for the indecent liberties charges to reach the jury for determination on the factual question of whether appellant exercised a custodial or supervisory relationship over K.I.C. This Court agrees.

A necessary element of the indecent liberties charges for which appellant was convicted is the maintenance of "a custodial or supervisory relationship over a child under the age of 18" by "[a]ny person 18 years of age or older who . . . is not legally married to such child[.]" Code § 18.2-370.1(A). "Generally, the word 'custody' has been defined as 'the care and control of a thing or person.'" *Guda v. Commonwealth*, 42 Va. App. 453, 458 (2004) (quoting *Black's Law Dictionary* 384 (6th ed. 1990)). "In interpreting Code § 18.2-370.1, the Virginia Courts have

broadly construed the meaning of custody, going beyond legal custody, to include those with informal, temporary custody." *Id.* This includes "teachers, athletic instructors and baby-sitters." *Kolesnikoff v. Commonwealth*, 54 Va. App. 396, 404 (2009) (quoting *Krampen v. Commonwealth*, 29 Va. App. 163, 168 (1999)). Accordingly, the required "custodial relationship [under Code § 18.2-370.1] arises when the supervising adult exercises care and control over the child, with the care including the 'responsibility for and the control of the child's safety and well being." *Guda*, 42 Va. App. at 459 (quoting *Krampen*, 29 Va. App. at 168).[10]

The evidence here establishes, at the very least, that appellant acted towards K.I.C. "in the nature of a baby-sitter, *i.e.*, one entrusted with the care of the child for a limited period of time." *Kolesnikoff*, 54 Va. App. at 404-05 (quoting *Krampen*, 29 Va. App. at 168). He supervised K.I.C. and R.I. while Maritza worked night shifts; he slept overnight in the Alexandria apartment; and he drove K.I.C. to-and-from school. *See, e.g.*, *Guda*, 42 Va. App. at 457-58 (finding appellant's duties as a school security officer established "sufficient control and care over the students, including the victim, to create the custodial or supervisory relationship necessary under Code § 18.2-370.1"); *Kolesnikoff*, 54 Va. App. at 404 (affirming appellant's conviction under Code § 18.2-370.1 for sexually assaulting his son's 15-year-old friend during a sleepover because appellant had "asserted authority . . . 'in the nature of a baby-sitter'" when he told the boys to stop playing video games and "go to bed" (quoting *Krampen*, 29 Va. App. at 168)); *Krampen*, 29 Va. App. at 168 (holding that appellant, "[a]s the only adult present" when

---

[10] Under this legal standard, an individual "may become a person 'responsible for the care of a child' by a voluntary course of conduct and without explicit parental delegation of supervisory responsibility or court order." *Snow v. Commonwealth*, 33 Va. App. 766, 773 (2000); *see also Guda*, 42 Va. App. at 459 ("Code § 18.2-370.1 does not require the specific entrustment of the child to the care of the adult to create a custodial or supervisory relationship.").

- 13 -

driving the victim home after church, "had the responsibility for and control of the victim's safety and well-being while she was in his care").

Appellant also took on the role of primary financial provider for K.I.C., R.I., and Maritza. He paid for housing, food, clothes, and utilities, as well as K.I.C.'s cell phone and monthly bills. Taken in the light most favorable to the Commonwealth, these facts by themselves support a finding that appellant exercised a custodial or supervisory relationship over K.I.C. Such determination is further strengthened by the fact that appellant's control over K.I.C.'s wellbeing began prior to the events in Virginia.

While K.I.C. still lived in El Salvador with her grandmother, appellant paid for her education and a private guard. Then, when K.I.C. and Maritza arrived in Texas, they were at the mercy of appellant for shelter, clothing, food, transportation, and even communication with family back in El Salvador. By his own testimony, appellant conceded the following: he paid someone at the U.S. border to release K.I.C. and her mother into his custody; he paid for the hotels where the family lived in Texas; he transported the family to South Carolina where he rented and furnished a house for K.I.C., Maritza, and R.I.; he bought clothing, groceries, and meals for the family; he bought K.I.C. a cell phone and paid the monthly bills; and he resided—at least part-time—with K.I.C., Maritza, and R.I. in the apartment he paid for in Alexandria.

This ongoing pattern of authority throughout K.I.C.'s life directly contradicts appellant's contention that the evidence did not demonstrate "an extended course of conduct creating a custodial relationship." As this Court has previously held, "[t]he purpose of the statute is 'to protect minors from adults who might exploit certain types of relationships.'" *Hutton v.*

*Commonwealth*, 66 Va. App. 714, 725 (2016) (quoting *Sadler*, 276 Va. at 765).[11] Familial

relationships can certainly create such opportunities for exploitation, especially when the adult

family member exercises almost exclusive financial control over the child.

"While no single piece of evidence may be sufficient, the combined force of many

concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind

irresistibly to a conclusion." *Pick v. Commonwealth*, 72 Va. App. 651, 668 (2021) (quoting

*Finney v. Commonwealth*, 277 Va. 83, 89 (2009)). The evidence in this case supports a finding

that appellant used his long-term familial and financial relationship with K.I.C. "to facilitate his

sexual abuse" of her. *Hutton*, 66 Va. App. at 722. Consequently, a reasonable factfinder could

conclude that, based on the totality of circumstances, appellant intentionally and voluntarily

maintained a custodial or supervisory relationship with K.I.C. at the time of the indecent liberties

offenses in Virginia. Accordingly, the trial court did not err in denying appellant's motions to

strike those charges.

---

[11] In *Sadler*, 276 Va. at 765, the appellant argued that he lacked the required "custodial or supervisory relationship" with the victim "because he was not acting as her [softball] coach or with her for any team-related reason at the time of the offensive conduct." In rejecting that claim, the Court opined that

> harmful exploitation is not limited to incidents occurring during
> the activity upon which the relationship is based. For example, a
> coach of a sports team might invite a team member to the coach's
> home to mow the grass and, during that time, engage in conduct
> proscribed by Code § 18.2-370.1. Mowing the lawn is not
> associated with the sports activity, nevertheless, the team member
> may still feel compelled to obey the coach, thus allowing the coach
> to exploit the relationship.

*Id.*

III. The Trial Court Did Not Err in Denying Appellant's First Motion to Set Aside the Jury Verdict

Appellant contends the trial court should have granted his motion to set aside the jury verdict because the evidence was insufficient to support his convictions. In support of that claim, appellant presents three separate arguments. To begin, appellant asserts that K.I.C.'s testimony was inherently incredible and thus did not prove any of the charges beyond a reasonable doubt. He then challenges the rape conviction on the basis that the evidence failed to prove that he "had sexual intercourse" with K.I.C. or that "the sexual intercourse was accomplished by 'force, threat, or intimidation.'" Lastly, he contends the evidence was insufficient as to both indecent liberties offenses because it failed to prove that he "sexually abused" K.I.C. or that he "proposed a sexual act" to K.I.C.

When reviewing whether the sufficiency of the evidence supports a conviction, the evidence is viewed in the light most favorable to the Commonwealth including "all reasonable inferences fairly deducible therefrom." *Cole v. Commonwealth*, 294 Va. 342, 398 (2017) (quoting *Singleton v. Commonwealth*, 278 Va. 542, 548 (2009)). Accordingly, this Court "discard[s] the evidence of the accused in conflict with that of the Commonwealth, and regard[s] as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)); *see also Reed v. Commonwealth*, 62 Va. App. 270, 283 (2013) (requiring appellate courts to defer "not only to [the jury's] findings of fact, but *also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved*" (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010))).

"In conducting our analysis, we are mindful that 'determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify.'" *Raspberry v. Commonwealth*, 71

Va. App. 19, 29 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). Here, the jury received testimony from a variety of witnesses, including K.I.C., her grandmother and other family members, law enforcement, school officials, CPS personnel, and appellant himself. The trial court instructed the jury on how to weigh such evidence and assess the credibility of witness testimony. By finding appellant guilty of rape and indecent liberties, the jury necessarily credited K.I.C.'s testimony about those offenses and discounted appellant's contradictory statements.

A. *K.I.C.'s Testimony Was Not Inherently Incredible*

In making credibility determinations, the factfinder must weigh the relevant factors, such as "the appearance and manner of the witnesses on the stand, their intelligence, their opportunity for knowing the truth and observing the things about which they testify, their interest in the outcome of the case, their bias, and . . . [any] prior inconsistent statements and prior criminal convictions." *Mullis v. Commonwealth*, 3 Va. App. 564, 571 (1987). Appellate courts, "knowing nothing of the evidence or of the witness, except as it appears on the paper, . . . [are] incompetent to decide on the credibility of the testimony." *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (quoting *Brown v. Commonwealth*, 29 Va. (2 Leigh) 769, 777 (1839)). Consequently, a reviewing court "must accept 'the [factfinder]'s determination of the credibility of witness testimony unless, "as a matter of law, the testimony is inherently incredible."'" *Hammer v. Commonwealth*, 74 Va. App. 225, 239 (2022) (quoting *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019)).

To be "inherently incredible," the testimony must be "'so manifestly false that reasonable men ought not to believe it,'" or it must be "'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Id.* at 239-40 (quoting *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018)); *see also Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011) (describing inherently incredible testimony as "so contrary to human

experience as to render it unworthy of belief" (quoting *Robertson v. Commonwealth*, 12 Va. App. 854, 858 (1991))). But "[a] legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness'[s] testimony or statements." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019). "Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Id.*[12] Accordingly, this Court "will not disturb a [factfinder]'s finding that a witness was not inherently incredible unless that determination is 'plainly wrong or without evidence to support it.'" *Hammer*, 74 Va. App. at 240 (quoting *Elliott v. Commonwealth*, 277 Va. 457, 463 (2009)).

Here, appellant baldly states that "KIC's claims of repeated sexual assaults and rapes across three states by a one-legged, wheelchair bound man, in the presence of her mother, defies logic." In support of that claim, appellant points to a lack of corroborating evidence, K.I.C.'s delayed reporting, and impeaching evidence introduced by the defense. The record, however, belies appellant's assertion that these factors rendered K.I.C.'s testimony inherently incredible as a matter of law.

First, appellant questions why K.I.C. "never called 911" and did not "report any abuse to her grandmother or her cousin, both of whom testified they were in regular contact with her." He goes on to claim that K.I.C. provided no credible explanation for why she "never reported anything to anyone despite having many opportunities to do so." But the record shows that K.I.C. explained repeatedly, and consistently, that she was afraid and isolated. Based on appellant's words and actions, K.I.C. feared that she would never see her grandmother again and that appellant would abuse R.I. instead if K.I.C. did anything to stop the ongoing sexual assaults.

---

[12] "[A]s Virginia law dictates, '[p]otential inconsistencies in testimony are resolved by the fact finder,' not the appellate court." *Kelley*, 69 Va. App. at 626 (second alteration in original) (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011)).

Failure to immediately report instances of sexual abuse does not render a victim's testimony inherently incredible, particularly where, as here, the explanation given for such delay is reasonable. *See, e.g.*, *Love v. Commonwealth*, 18 Va. App. 84 (1994) (12-year-old victim's 7-year delay in reporting ongoing sexual abuse did not render her testimony inherently incredible); *Woodard v. Commonwealth*, 19 Va. App. 24, 28 (1994) (13-year-old victim's 2-month delay in reporting her rape was "explained by and completely consistent with the all too common circumstances surrounding sexual assault on minors--fear of disbelief by others and threat of further harm from the assailant"); *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991) (juvenile victim's delayed reporting "did not render his testimony inherently incredible" where his "youth, fright and embarrassment certainly provided the jury with an acceptable explanation for his behavior in these circumstances"). Under the circumstances of this case, "[t]he jury was entitled to attribute such significance as it deemed appropriate to [K.I.C.'s reporting] delay." *Corvin*, 13 Va. App. at 299; *see also Love*, 18 Va. App. at 90 ("[I]t was up to the jury to determine what effect, if any, the delay in reporting the incident had on the credibility of the child's testimony.").

Appellant further alleges that there was no substantial change in circumstances justifying K.I.C.'s decision to make a report in Alexandria after not having done so in Texas or South Carolina. Again, the record contradicts this argument. K.I.C.'s official reports to authorities—in her school, at CPS, and with the police—occurred only after her boyfriend had made a general report on K.I.C.'s behalf but without her notice or consent. Only once the cat was out of the bag, so to speak, did K.I.C. begin to talk about the sexual abuse she had suffered behind closed doors.

Next, appellant points to the admitted photographs of K.I.C. "posing and smiling with her mother outside the Texas hotel and in Alexandria," as well as the loving sentiments K.I.C. wrote in a Mother's Day card to Maritza. He claims that such evidence undermines K.I.C.'s allegations about her mother's role in facilitating the alleged sexual abuse. The weight to be given such

evidence, however, properly rested with the jury. "Indeed, '[t]he living record contains many guideposts to the truth which are not in the printed record,' and an appellate court, not having the benefit of these guideposts, 'should give great weight to the conclusions of those who have seen and heard them.'" *Dalton v. Commonwealth*, 64 Va. App. 512, 526 (2015) (alteration in original) (quoting *Bradley v. Commonwealth*, 196 Va. 1126, 1136 (1955)).

Finally, appellant challenges K.I.C.'s testimony regarding other allegations of sexual abuse. Although he was precluded from presenting such evidence to the jury, appellant now relies on the Commonwealth's nolle prosequi of Counts 2 and 3 in the indictment as evidence of K.I.C.'s inherent incredibility. Those charges were based on statements K.I.C. had made to the investigating SVU detective, and they were later nolle prosequied when K.I.C. recanted the underlying allegations. K.I.C. did not testify at trial that appellant had engaged in oral sodomy with her, nor did she deny making such prior complaint to the police. Rather, when asked on cross-examination whether she "ever told the police that [appellant] performed oral sex on her," K.I.C. merely stated that she did not remember. Similarly, K.I.C. was unable to recall having accused another family member of sexually assaulting her in El Salvador; the jury nevertheless heard testimony from family members who said that K.I.C. had made and subsequently recanted such allegations without explanation.

Although these are proper inquiries for the jury to consider when assessing K.I.C.'s credibility, they do not render K.I.C.'s testimony inherently incredible as a matter of law. "So long as a witness deposes as to facts, which, if true, are sufficient to maintain their verdict, then the fact that the witness'[s] credit is impeached by contrary statements affects only the witness'[s] credibility . . . [and] the weight and sufficiency of the testimony." *Dalton*, 64 Va. App. at 526 (third and fourth alterations in original) (quoting *Simpson v. Commonwealth*, 199 Va. 549, 557 (1957)). To be sure, evidence of prior recantations can cut against a witness's general credibility,

but it is notable that K.I.C.'s prior statements were not made in court or otherwise under oath and that her trial testimony was not inconsistent with her prior statements.[13]

Furthermore, a reasonable factfinder could view K.I.C.'s willingness to recant certain allegations but not others as evidence supporting the credibility of her testimony about the charged offenses appellant faced at trial. "[A] fact finder's evaluations of credibility are not limited to choosing between competing accounts offered by different witnesses, . . . but often include, as in this case, resolving conflicts in a single witness'[s] testimony, accepting that part of the testimony it deems credible and rejecting the portion it deems incredible." *McNeal*, 282 Va. at 22; *see also Washington v. Commonwealth*, 75 Va. App. 606, 616 (2022) ("The trier of fact is 'free to believe or disbelieve, in part or in whole, the testimony of any witness." (quoting *Bazemore v. Commonwealth*, 42 Va. App. 204, 213 (2004) (en banc))). Viewed in its totality, in the light most favorable to the Commonwealth, K.I.C.'s trial testimony does not rise to a level of being so manifestly false as to be inherently unbelievable. Accordingly, this Court will not disturb the jury's credibility assessments.

B. *The Jury Verdict is Based on Sufficient Evidence*

It is well-established that "a conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim." *Poole v. Commonwealth*, 73 Va. App. 357, 368 (2021) (quoting *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005)). As such, "'[t]here can be no relief' in this Court if a witness testifies to facts 'which, if true, are sufficient' to support the conviction '[i]f the trier of the facts' bases its decision 'upon that

---

[13] Instruction 8 advised the jury that:

> If you believe from the evidence that a witness previously made a statement inconsistent with his testimony at this trial, the only purpose for which that statement may be considered by you is for its bearing on the witness'[s] credibility. It is not evidence that what the witness previously said is true.

testimony.'" *Kelley*, 69 Va. App. at 626 (second alteration in original) (quoting *Smith v. Commonwealth*, 56 Va. App. 711, 718-19 (2010)). Furthermore, the jury was entitled to reject appellant's contradictory testimony. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Speller v. Commonwealth*, 69 Va. App. 378, 388 (2018); *see also Maust v. Commonwealth*, 77 Va. App. 687, 703 (2023) (en banc) ("[A] fact-finder, having rejected a defendant's attempted explanation as untrue, may draw the reasonable inference that his explanation was made falsely in an effort to conceal his guilt." (alteration in original) (quoting *Covil v. Commonwealth*, 268 Va. 692, 696 (2004))).

In convicting appellant, the jury credited K.I.C.'s testimony and rejected appellant's hypotheses of innocence.[14] Because K.I.C.'s testimony established the necessary elements of each charge, this Court finds that the jury's verdict was "not plainly wrong or without evidence to support it." *Dalton*, 64 Va. App. at 527. Accordingly, as detailed below, the trial court did not err in denying appellant's first motion to set aside the verdict for insufficient evidence of rape and indecent liberties.

### i. *Rape*

An individual is guilty of rape if he "has sexual intercourse with a complaining witness . . . against the complaining witness's will, by force, threat[,] or intimidation of or against the complaining witness[.]" Code § 18.2-61(A)(i). "The issue of whether the crime was committed by 'force, threat or intimidation' is a question of fact." *Bondi v. Commonwealth*, 70 Va. App. 79, 88 (2019) (quoting *Wactor v. Commonwealth*, 38 Va. App. 375, 380 (2002)). "Intimidation may

---

[14] Instruction 24 advised the jury that K.I.C.'s testimony need not be "corroborated to find the defendant guilty of a sexual offense." If found credible, K.I.C.'s "testimony alone is sufficient to find the defendant guilty if the guilt of the defendant is believed by the jury beyond a reasonable doubt." *See, e.g.*, *Ervin v. Commonwealth*, 57 Va. App. 495, 519-21 (2011) (en banc) (holding that a factfinder may properly reject a defendant's hypothesis of innocence).

be caused by the imposition of psychological pressure on one who, under the circumstances, is vulnerable and susceptible to such pressure." *Sabol v. Commonwealth*, 37 Va. App. 9, 18 (2001) (quoting *Sutton v. Commonwealth*, 228 Va. 654, 663 (1985)).[15] Circumstances such as "the victim's age, the relative size of the defendant and victim, the familial relationship between the defendant and victim, and the vulnerable position of the victim" are relevant factors in evaluating whether an act of sexual intercourse was accomplished by intimidation. *Bondi*, 70 Va. App. at 90 (quoting *Commonwealth v. Bower*, 264 Va. 41, 46 (2002)).

Here, K.I.C.'s testimony established all three elements of rape. In brief, K.I.C. testified that appellant began raping and sexually assaulting her when she was 15 years old, after she arrived in Texas with her mother. Although appellant only had one leg, he moved about without assistance; a fact corroborated by appellant's own testimony about the frequency of his travels to-and-from Texas and South Carolina, as well as between South Carolina and Virginia. In a matter of months after K.I.C.'s arrival in the United States, appellant moved her, her mother, and her sister from Texas to South Carolina to Virginia. Appellant and Maritza were the only adult family members taking care of K.I.C. and R.I. in the United States during that time.

In each state, appellant engaged in the same assaultive behavior: he summoned K.I.C. into the bed that he shared with K.I.C.'s mother; he touched K.I.C.'s breasts and vagina; and he inserted his penis into K.I.C.'s vagina. Although K.I.C. obeyed appellant's instructions, she did not consent to being raped. When questioned why she did not resist, K.I.C. explained that appellant and Maritza had threatened that she would not see her grandmother again unless she acquiesced to the sexual assaults. She further testified that she feared appellant would start assaulting her younger sister, R.I., because R.I. had confided to K.I.C. that appellant had "always hit her" and "abused her from the time she was eight years old." As "the oldest sister," K.I.C.

---

[15] This exact language was given to the jury in Instruction 14.

believed she had to protect R.I. from the same abuse. The few times K.I.C. tried to prevent the abuse herself, appellant instructed her to speak to her mother, who told K.I.C. to obey appellant or else R.I. "would take her place."

When questioned why she did not report the sexual assaults, K.I.C. testified that she was scared and alone in an unfamiliar country and she had no one to turn to for help. She did not even feel comfortable going to the police by herself, and she was afraid that no one would believe her. Based on the totality of the evidence, a jury could reasonably conclude that appellant raped K.I.C. by using "force, threat or intimidation" to have "sexual intercourse" with her "against her will and without her consent."

ii. *Indecent Liberties*

A person commits the crime of taking indecent liberties with a minor when, "with lascivious intent," they "knowingly and intentionally" commit an enumerated act, while "18 years of age or older," against a "child under the age of 18" over whom they "maintain[] a custodial or supervisory relationship" and to whom they are "not legally married[.]" Code § 18.2-370.1(A). As reflected in Instructions 17 and 25, appellant was charged with two counts of indecent liberties for two separate specified acts: (i) "sexually abus[ing]" K.I.C. "by touching [her] intimate parts or material directly covering such intimate parts[;]" and (ii) "propos[ing] to K.I.C." that she perform "an act of fellatio[.]" *See* Code § 18.2-370.1(A)(ii) and (vi); *see also* Code § 18.2-67.10 (defining "sexual abuse" and "intimate parts").

As discussed above, the jury had sufficient evidence to find that appellant exercised a "custodial or supervisory relationship" over K.I.C. at the time of the offenses. Although appellant alleged otherwise in his motions to strike, he did not renew that argument in his motion to set aside the verdict. As such, his assertion on appeal—that the trial court erred in refusing to

- 24 -

set aside these convictions—rests solely on his contention that the evidence was insufficient to prove the enumerated act for each indecent liberties charge.[16]

The same testimony described above in support of the rape charge also supports the indecent liberties charges based on sexual abuse. K.I.C. explicitly testified that appellant would touch her breasts and vagina before he raped her. She also testified that appellant removed her clothes and touched her breasts and vagina when Maritza was out of the house working during the night. Regarding the other indecent liberties charge, K.I.C. testified that appellant told her to "put [her] mouth on his penis." She explained that this incident occurred after appellant had looked through her phone and discovered that she was talking to a boy her own age. He angrily confronted K.I.C. about whether she had a boyfriend, telling her that she "belong[ed] to him and no one else." He then slapped her and told her to perform fellatio on him if she wanted to get her cell phone back from him.

Accordingly, this Court finds that the jury had sufficient evidence to convict appellant of both indecent liberties charges where K.I.C.'s testimony established that appellant sexually abused her by touching her breasts and vagina and that he proposed she perform fellatio on him.

Assignments of Error III-VIII: The Trial Court's Evidentiary Rulings

Most of appellant's remaining assignments of error address several evidentiary rulings the trial court made. In part, he asserts that the trial court abused its discretion in allowing the Commonwealth to elicit inadmissible hearsay testimony from its witnesses. He further argues that the trial court erred in precluding him from introducing certain evidence during his opening statement and cross-examination of K.I.C. This Court finds no such error.

---

[16] Appellant does not contest the other elements of these charges.

I.  Standard of Review

"The admissibility of evidence is within the broad discretion of the trial court."  *Cheripka v. Commonwealth*, 78 Va. App. 480, 494 (2023) (quoting *Warnick v. Commonwealth*, 72 Va. App. 251, 263 (2020)).  "[W]e review a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to admit evidence absent a finding of abuse of that discretion."  *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021) (alteration in original) (quoting *Avent*, 279 Va. at 197).  "The abuse of discretion standard draws a line—or rather, demarcates a region—between the unsupportable and the merely mistaken, between the legal error . . . that a reviewing court may always correct, and the simple disagreement that, on this standard, it may not."  *Jefferson v. Commonwealth*, 298 Va. 1, 10-11 (2019) (alteration in original) (quoting *Reyes v. Commonwealth*, 297 Va. 133, 139 (2019)).

"In evaluating whether a trial court abused its discretion, . . . we do not substitute our judgment for that of the trial court.  Rather, we consider only whether the record fairly supports the trial court's action."  *Kenner*, 299 Va. at 423 (alteration in original) (quoting *Carter v. Commonwealth*, 293 Va. 537, 543 (2017)).  In other words, "[t]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the first instance."  *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (second alteration in original) (quoting *Lawlor*, 285 Va. at 212).

II.  The Trial Court Did Not Err in Permitting the Commonwealth to Admit Certain Witness Testimony

In Assignment of Error IV, appellant argues that the trial court "erred in admitting extensive and repeated testimony" from K.I.C. about statements R.I. allegedly made accusing appellant of abusing her.  In Assignment of Error VIII, appellant asserts that the trial court "erred in admitting hearsay testimony by a school employee" about the sexual assault allegations K.I.C.

- 26 -

had made to a different school employee who did not testify at trial. Although appellant did not preserve either of these arguments below, he nevertheless asks this Court to consider them on appeal by invoking "[t]he good cause and ends of justice exception to Rule 5A:18." This Court declines to do so for the following reasons.

A. *Appellant Did Not Preserve These Claims for Appeal*

To preserve an issue for appellate review, Rule 5A:18 requires a party to make a timely and specific objection to the trial court's ruling.[17] "The purpose of [the] contemporaneous objection requirement is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). But "[n]ot just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

Furthermore, "the *precise* nature of the objection must be clear because '[m]aking one specific argument on an issue does not preserve a separate legal point on the same issue for [appellate] review.'" *Mollenhauer v. Commonwealth*, 73 Va. App. 318, 329-30 (2021) (alterations in original) (quoting *Johnson v. Commonwealth*, 58 Va. App. 625, 637 (2011)). Evidence presented without objection is deemed "to be properly before the trial court." *Wells v. Commonwealth*, 65 Va. App. 722, 729 (2016) (citing *Gregory v. Commonwealth*, 22 Va. App. 100, 111 (1996)). Thus, "[i]f a party fails to timely and specifically object, he waives his argument on appeal." *Brittle v. Commonwealth*, 54 Va. App. 505, 512 (2009) (citing *Arrington*

---

[17] "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18.

*v. Commonwealth*, 53 Va. App. 635, 641 (2009)).  The only exceptions to this strict rule are "for good cause shown or to enable this Court to attain the ends of justice."  Rule 5A:18.

B.  *The Good Cause Exception Does Not Apply to Appellant's Case*

As Rule 5A:18 plainly states, this Court may consider the merits of an unpreserved argument only "for good cause shown *or* . . . to attain the ends of justice."  (Emphasis added).; *see also Perry v. Commonwealth*, 58 Va. App. 655, 667 (2011) (acknowledging that "Rule 5A:18 is not an altogether static rule in that it does provide *two* exceptions to the contemporaneous objection rule" (emphasis added)).  The "good cause" exception applies only "where an appellant did not have the opportunity to object to a ruling in the trial court." *Id.*  When an appellant had such opportunity to object, "'but elected not to do so,' the exception does not apply." *Id.* (quoting *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000)).

Although appellant includes the phrase "good cause" in his request for this Court to consider Assignments of Error IV and VIII, he does not properly present it as a stand-alone exception to Rule 5A:18.  Such distinction is not trivial.  After conceding that "trial counsel failed to object" to the testimony being challenged on appeal, appellant asks this Court to invoke "[t]he good cause and ends of justice *exception* to Rule 5A:18."  (Emphasis added).  But for each exception invoked, appellant must satisfy a distinct burden and "counsel must state *why* the good cause *and/or* ends of justice *exceptions* to Rule 5A:18 are applicable."  Rule 5A:20(e) (emphases added).

Nowhere in appellant's briefs does he explain why this Court should consider the merits of his unpreserved claims "for good cause shown."  Nor does he define or present evidence of "good cause" in the context of Rule 5A:18.  In fact, appellant seems to abandon the "good cause" approach

entirely by exclusively arguing for reversal based on "the ends of justice."[18]  Accordingly, this Court refuses to invoke the good cause exception and instead turns to appellant's arguments regarding the ends of justice exception.

C. *The Ends of Justice Exception Does Not Apply to Appellant's Case*

"'"The ends of justice exception is narrow and is to be used sparingly," and [it] applies only in the extraordinary situation where a miscarriage of justice has occurred.'" *Pulley v. Commonwealth*, 74 Va. App. 104, 126 (2021) (alteration in original) (quoting *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (en banc)).  "Virginia courts applying the ends-of-justice exception require a [party] to present not only a winning argument on appeal but also one demonstrating that the trial court's error result[ed] in a 'grave injustice' or a wholly inexcusable 'denial of essential rights.'" *Winslow v. Commonwealth*, 62 Va. App. 539, 546-47 (2013) (quoting *Brittle*, 54 Va. App. at 513).[19]  An appellant "must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Holt*, 66 Va. App. at 210 (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997)).  "[T]o show that a miscarriage of justice has occurred, thereby invoking the ends of justice exception, the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." *Id.* (quoting *Redman*, 25 Va. App. at 221-22).

---

[18] Notwithstanding appellant's waiver of the "good cause" exception, this Court's review of the record establishes that appellant had multiple opportunities to object to the testimony he now challenges.  Any reason for his failure to make such objection is not articulated in the record or by appellant on appeal.

[19] "It is never enough for the [appellant] to merely assert a winning argument on the merits—for if that were enough procedural default 'would never apply, except when it does not matter.'" *Winslow*, 62 Va. App. at 546 (quoting *Alford v. Commonwealth*, 56 Va. App. 706, 710 (2010)).  "Taken to its logical conclusion, such an approach would mean that only losing arguments could be waived and 'every issue would be subject to appellate review regardless of whether the issue was properly preserved.'" *Id.* (quoting *Brittle*, 54 Va. App. at 513).

"The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Id.* (quoting *Brittle*, 54 Va. App. at 514). Appellant has not met that burden here. Regarding the school employee's testimony about K.I.C., appellant argues that it was inadmissible hearsay and prejudicial "because it served to bolster the credibility of K.I.C. by showing that she had made a 'recent complaint' of sexual assault to her school, without any ability to cross examine the declarant." The record belies that claim; indeed, the witness never testified to any out-of-court statement purportedly made by K.I.C.

Instead, the testimony was limited to the witness's knowledge that K.I.C. had reported a "possible sexual assault" to another school administrator, which led that administrator to "call[ ] the CPS hotline to report the incident." He did not offer any statements from that report or from the other administrator. His testimony, therefore, does not implicate the rules against hearsay and, quite frankly, is largely "cumulative of other, undisputed evidence[]" provided by the Commonwealth's other witnesses, including K.I.C. herself. *Warnick*, 72 Va. App. at 272 (quoting *McLean v. Commonwealth*, 32 Va. App. 200, 211 (2000)).

Appellant next argues that K.I.C.'s testimony about R.I.'s accusations against appellant "was so unfairly prejudicial that the ends of justice require this Court to reverse[.]" He reasons that "[t]he jury almost certainly drew improper inferences from th[at] testimony" because it was "inadmissible hearsay . . . admitted for the truth of the matter asserted and without any cautionary instructions." He further claims that such testimony was improperly admitted "in violation of Rule 2:404(b), which prohibits the admission of other crimes or acts to prove the character trait of a person or to show propensity."

None of these arguments, however, demonstrates a miscarriage of justice warranting application of the ends of justice exception. K.I.C.'s recitation of R.I.'s confessions to her are not hearsay because they were not offered for the truth of the matter asserted—i.e., that appellant

abused R.I. *See* Va. R. Evid. 2:801(c) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). Rather, those statements were admissible to demonstrate their effect on the listener, K.I.C., not for their veracity. "If a statement is offered for any purpose other than to prove the truth or falsity of the contents of the statement, such as to explain the declarant's conduct or that of the person to whom it was made, it is not objectionable as hearsay." *Jones v. Commonwealth*, 71 Va. App. 597, 604 (2020) (quoting *Hamm v. Commonwealth*, 16 Va. App. 150, 156 (1993)).[20]

---

[20] "The responsibility of properly instructing a jury 'rest[s] in the sound discretion of the trial court." *Holmes v. Commonwealth*, 76 Va. App. 34, 52 (2022) (alteration in original) (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)). Only "when a principle of law is vital to a defendant in a criminal case," such as whether a sexual assault victim "consented" to the defendant's conduct, does "a trial court ha[ve] an affirmative duty to properly instruct a jury about the matter." *Jimenez v. Commonwealth*, 241 Va. 244, 250 (1991); *see also Whaley v. Commonwealth*, 214 Va. 353, 355-56 (1973) ("[T]he trial court is not required to amend or correct an erroneous instruction, . . . subject to the limitation that when the principle of law is materially vital to a defendant in a criminal case, it is reversible error for the trial court to refuse a defective instruction instead of correcting it and giving it in the proper form."). That not being the case here, the trial court was not required to give the jury a sua sponte cautionary instruction related specifically to K.I.C.'s testimony about R.I.'s statements. *See Manetta v. Commonwealth*, 231 Va. 123, 127 n.2 (1986) (stating that a trial court is not required to give cautionary instructions sua sponte when not requested by a party).

Furthermore, unlike the defendants in *Jimenez* and *Whaley*, appellant does not allege that the instructions given to the jury at the end of trial on how to evaluate witness testimony and out-of-court statements, were incorrect or incomplete, thereby leaving the jury "in the dark on the subject." *Whaley*, 214 Va. at 356; *see also Campbell v. Commonwealth*, 162 Va. 818, 827-28 (1934) (explaining that an instruction on reasonable doubt is not a sufficient substitute for an instruction on the presumption of innocence). As pertinent here, the trial court advised the jury as follows:

> Instruction 9, you may consider evidence that the defendant committed a crime other than the crime for which he is on trial only as evidence of the defendant's conduct and feelings toward the victim, KIC, and relations between them, as evidence of the defendant's opportunity and as evidence of the absence of mistake or accident on the part of the defendant in connection with the crime for which he is on trial and for no other purpose.

Regardless of whether such statements were later proven untrue, K.I.C.'s belief in them at the time remains unchanged, and they were offered to explain why K.I.C. did not try to resist or report appellant's abuse of her, a point that appellant raised throughout trial in his efforts to undermine K.I.C.'s credibility. Accordingly, the trial court did not err in determining that admission of such testimony did not violate Virginia Rules of Evidence 2:801, 2:802, or 2:404(b).

In light of the above-described circumstances, the record does not "affirmatively prove that an element of the offense[s] did not occur[,]" and appellant has not demonstrated that he "was convicted for conduct that was not a criminal offense[.]" *Holt*, 66 Va. App. at 210. Accordingly, appellant has failed to show that a miscarriage of justice occurred because of the admitted testimony he challenges for the first time on appeal.

Appellant nevertheless argues that "failure to consider" the trial court's error in admitting prejudicial and inadmissible hearsay testimony "would result in a grave injustice" under *Commonwealth v. Bass*, 292 Va. 19 (2016), because "the jury that was not allowed to fully consider compelling evidence of the Complainant's untruthfulness was allowed to hear hearsay

---

. . . .

> Instruction 13, the element of force, threat or intimidation required [to prove rape] must have been sufficient to overcome any unwillingness on the part of KIC to have sexual intercourse.

. . . .

> Instruction 16, the threat used by the defendant to intimidate the victim to engage in sexual intercourse against her will can be a threat against someone other than the victim.

"Without any evidence in the record to the contrary, we presume the jury followed the court's instructions." *Bennett v. Commonwealth*, 29 Va. App. 261, 276 (1999). Therefore, this Court infers that the unchallenged instructions given to the jury were sufficient to ensure that the jury considered K.I.C.'s testimony only for permitted purposes instead of as substantive evidence of appellant's guilt. *See, e.g.*, *Jones v. Commonwealth*, 71 Va. App. 70, 92 (2019).

testimony aimed at bolstering her credibility, without an opportunity for the defendant to cross-examine the declarant[.]" This Court disagrees. In *Bass*, the Supreme Court stated that it "considers two questions when deciding whether to apply the ends of justice exception: '(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice.'" 292 Va. at 27 (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). The record belies a finding of either error or grave injustice under the circumstances here.

Simply put, the trial court did not err in admitting the challenged testimony from K.I.C. and the school employee. And even if the trial court had erred, the record does not substantiate appellant's assertion that the jury convicted him upon an improper basis. As already discussed, the jury had sufficient evidence to assess both K.I.C.'s and appellant's credibility, and K.I.C.'s testimony, if credited, was sufficient to sustain appellant's convictions. *See, e.g.*, *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) ("The sole responsibility to determine the credibility of witnesses, the weight to be given their testimony, and the inferences to be drawn from proven facts lies with the fact finder." (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017))); *Willis v. Commonwealth*, 218 Va. 560, 563 (1977) ("A conviction of rape may be sustained on the uncorroborated testimony of a prosecutrix if her evidence is credible, and the guilt of the accused is believed by the jury beyond a reasonable doubt."). Because the ends of justice exception is not applicable here, this Court finds that Assignments of Error IV and VIII are procedurally defaulted under Rule 5A:18.

III. The Trial Court Did Not Err in Precluding Appellant From Presenting Certain Evidence

Appellant next argues that the trial court erroneously limited the scope of his opening statement by excluding any mention of K.I.C. retracting the oral sex and digital penetration allegations that formed the basis of the charges the Commonwealth nolle prosequied

immediately before appellant's trial began.[21]  He also maintains that the trial court abused its discretion in precluding him from cross-examining K.I.C. about (i) her reputation for untruthfulness as well as a specific prior allegation that she had witnessed appellant sexually abuse her cousin, Ester; and (ii) her return to her mother's home after "escaping" from foster care.[22]  Finding no error, this Court affirms the trial court's rulings.

A. *Precluding Discussion of Nolle Prosequied Charges During Opening Statement*

In his opening statement, appellant sought to inform the jury that "[K.I.C.] told the police that her uncle had committed oral sex on her, and that he had inserted his fingers into her vagina, and he was duly charged with that, but he's not on trial for that today[.]"  Even though the Commonwealth objected, counsel continued, stating that he "was just going to say that she said-- she accused him of doing something and then she took it back which is exactly why they nolle prosequi[ed] the charges.  I won't mention the indictment."  The trial court sustained the Commonwealth's objection.

Although Code § 19.2-265 affords counsel the right to make an opening statement, the trial court has "broad discretion in the supervision of opening statements."  *Spencer v. Commonwealth*, 238 Va. 295, 311 (1989) (quoting *O'Dell v. Commonwealth*, 234 Va. 672, 703 (1988)).  The purpose of an opening statement is "merely to inform the jury of what counsel expects the evidence to be so that they may better understand the evidence."  *Arrington v. Commonwealth*, 10 Va. App. 446, 448 (1990) (quoting *Fields v. Commonwealth*, 2 Va. App. 300, 307 (1986)).  "However, statements made during an opening statement are not evidence; therefore, opening statements may not 'open the door' to otherwise inadmissible evidence."  *Bynum v. Commonwealth*, 28 Va. App. 451, 458-59 (1998) (quoting *Fields*, 2 Va. App. at 307).

---

[21] Assignment of Error III.

[22] Assignments of Error V, VI, and VII, respectively.

- 34 -

The Commonwealth's decision to nolle prosequi indictments is not relevant or admissible evidence. Before trial, the Commonwealth informed appellant that, in a recent interview, K.I.C. retracted her prior assertions that appellant had performed oral sex on her and digitally penetrated her vagina. As a result, the Commonwealth notified appellant that it intended to nolle prosequi the indictments based upon those allegations. It further stipulated to the authenticity of the investigating SVU detective's notes about K.I.C.'s initial allegations so that appellant could use it for impeachment purposes at trial. Appellant did not, however, confront K.I.C. about this inconsistency during cross-examination and did not introduce the impeachment evidence at trial.

Therefore, even had the trial court erred in precluding appellant from mentioning this matter during his opening statement, such ruling was harmless given appellant's failure to introduce evidence of this topic during K.I.C.'s cross-examination, thereby effectively waiving his prior objection. Likewise, appellant does not allege that the limitation of his opening statement prejudiced him. *Cf. Arrington*, 10 Va. App. at 448-49. Accordingly, this Court finds that the trial court did not abuse its discretion in precluding appellant from informing the jury of the nolle prosequied indictments based on K.I.C.'s recantations.

B. *Limiting K.I.C.'s Cross-Examination*

The trial court did not abuse its discretion in precluding defense counsel from cross-examining K.I.C. about what it determined were inadmissible matters. "Cross-examination of prosecution witnesses is 'fundamental to the truth-finding process and is an absolute right guaranteed to an accused by the confrontation clause of the sixth amendment.'" *Maynard v. Commonwealth*, 11 Va. App. 437, 444 (1990) (en banc) (quoting *Williams v. Commonwealth*, 4 Va. App. 53, 77-78 (1987)). But once "the right [of] cross-examin[ation] has been fairly and substantially exercised," the trial court "'may exercise discretion to see that the right is not abused.'" *Id.* (quoting *Williams*, 4 Va. App. at 78).

That authority works in tandem with a trial court's responsibility to determine the admissibility of evidence, and "'an appellate court will not reject such decision absent an "abuse of discretion."'" *McBride v. Commonwealth*, 75 Va. App. 556, 569 (2022) (quoting *Williams v. Commonwealth*, 71 Va. App. 462, 487 (2020)), *rev'd on other grounds*, 302 Va. 443 (2023). Accordingly, the scope of cross-examination "necessarily must be left largely to the discretion of the trial judge[]" who determines whether the questioned witness may answer certain questions in compliance with the Virginia Rules of Evidence. *Slade v. Commonwealth*, 155 Va. 1099, 1110 (1931).[23]

---

[23] Appellant argues for the first time on appeal that his "Sixth Amendment right to effective cross-examination" was violated when the trial court limited his questioning of K.I.C. That argument is procedurally defaulted under both Rules 5A:18 and 5A:20.

First, appellant did not sufficiently raise a Sixth Amendment claim in the trial court. *See* Rule 5A:18. "Making one specific argument on an issue does not preserve a separate legal point on the same issue for review." *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc); *see also West Alexandria Prop., Inc. v. First Va. Mortgage and Real Estate Inv. Trust*, 221 Va. 134, 138 (1980) ("On appeal, though taking the same general position as in the trial court, an appellant may not rely on reasons which could have been but were not raised for the benefit of the lower court."). "Rule 5A:18 applies to bar even constitutional claims[]" not properly raised below. *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)). For example, a defendant's "brief reference to [a] constitutional issue in his written motion[,]" without more, is insufficient to preserve a constitutional claim for appeal. *Howard v. Commonwealth*, 55 Va. App. 417, 425 (2009), *aff'd*, 281 Va. 455 (2011); *see also Floyd v. Commonwealth*, 219 Va. 575, 584 (1978) (holding that appellate courts will not consider an argument that differs from the specific argument presented to the trial court, even if it relates to the same general issue).

Nor did appellant ask this Court to invoke either the good cause or ends of justice exceptions to Rule 5A:18 in his opening brief. *See, e.g.*, Rule 5A:20(e) (directing that, "[w]hen the assignment of error was not preserved in the trial court, counsel must state [in his opening brief] why the good cause and/or ends of justice exceptions to Rule 5A:18 are applicable"); *Jeter v. Commonwealth*, 44 Va. App. 733, 740-41 (2005) (holding that arguments cannot be raised for the first time in a reply brief or at oral argument because the appellee does not have a meaningful opportunity to respond). This Court will not consider those exceptions sua sponte. *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023).

Second, this constitutional argument is outside the scope of appellant's assignments of error; he challenges the preclusion of certain evidence during K.I.C.'s cross-examination on other stated grounds as merely an abuse of the trial court's discretion. This Court is "limited to reviewing the assignments of error presented by the litigant." *Banks v. Commonwealth*, 67 Va. App. 273, 289 (2017); *see also* Rule 5A:20(c)(1) ("Only assignments of error listed in the

i. *"Reputation for Untruthfulness" and "Prior False Allegation"*

During cross-examination of K.I.C., appellant attempted to elicit testimony generally "regarding her reputation for untruthfulness" and specifically "regarding her prior false allegation" that appellant had abused her cousin, Ester, in El Salvador. The trial court's preclusion of both lines of questioning are supported by the Rules of Evidence.

"[W]hen a specific objection is made to evidence or when inquiry is made by the trial judge concerning the purpose of evidence, the proponent of the evidence has the burden of establishing its admissibility." *Hicks v. Commonwealth*, 71 Va. App. 255, 276 (2019) (alteration in original) (quoting *Neal v. Commonwealth*, 15 Va. App. 416, 420 (1992)). "The right to cross-examine prosecution witnesses to show bias or motivation to fabricate, when not abused, is absolute." *Banks v. Commonwealth*, 16 Va. App. 959, 962 (1993). But "[a]ttempting to introduce evidence of prior misconduct, for which there has been no criminal conviction, to impeach a witness'[s] general character for truthfulness differs from attempting to introduce such evidence to show that a witness is biased or motivated by self[-]interest in a particular case." *Id.* at 963 (quoting *Commonwealth v. Shands*, 487 A.2d 973, 976 (Pa. Super. Ct. 1985)).

Regarding the "reputation" evidence, defense counsel first asked K.I.C.: "have you been known to lie about things in El Salvador before you came here?" The Commonwealth objected, and the trial court sustained the objection, stating that "[w]hat she was known for in El Salvador is nothing but hearsay." Counsel then asked K.I.C.: "Did you lie when you were in El Salvador?" The Commonwealth objected, and the trial court again sustained the objection, stating that "[w]hether [K.I.C.] ever told a lie in El Salvador, or here, or anywhere else is simply

---

brief will be noticed by this Court."). Thus, we will "not consider issues touched upon by the appellant's argument but not encompassed by his assignment of error." *Banks*, 67 Va. App. at 290; *see also* Rule 5A:20(c)(4) ("Assignments of error listed in the opening brief of appellant are binding on the appellant for substantive purposes, unless the Court has granted a motion to amend.").

not relevant. . . . What's relevant is prior statements that are false about the uncle sexually abusing her. That's what's relevant if there's evidence of it."[24]

Virginia Rule of Evidence 2:608(a)(1) permits a party to attack the credibility of a witness with evidence "in the form of reputation" that relates to that witness's "character trait for truthfulness or untruthfulness[.]" It should go without saying, however, that a witness cannot testify to their own reputation within the community as doing so would necessarily rely upon either speculation or hearsay. *See* Va. R. Evid. 2:602 (personal knowledge); Va. R. Evid. 2:802 (hearsay). Accordingly, appellant's first question to K.I.C.—"have you been known to lie about things[?]"—was inadmissible. Appellant's second question—"Did you lie when you were in El Salvador?"—was also inadmissible because "specific instances of the conduct of a witness may not be used to attack or support credibility; and . . . may not be proved by extrinsic evidence." Va. R. Evid. 2:608(b); *see also Wynne v. Commonwealth*, 216 Va. 355, 356 (1975) ("[A]lthough evidence of bad general reputation for truth and veracity may be shown to impeach a witness, specific acts of untruthfulness or bad conduct are not admissible.").

Turning next to the "prior false allegation," appellant argues that the trial court abused its discretion in precluding him from questioning K.I.C. about a statement she made to police accusing appellant of sexually assaulting her cousin Ester. Appellant argues that this line of questioning was admissible under Rule 2:608(e), and he proffered below that Ester would testify that appellant had never sexually assaulted her. Rule 2:608(e) creates a narrow exception to Rule 2:608(b)'s general prohibition of evidence relating to specific instances of untruthfulness:

---

[24] Appellant argues that the trial court's comment, made in front of the jury, was "an incorrect statement of the law and highly prejudicial." Because he did not raise that objection below at the time the remark was made, appellant has waived this claim on appeal. *See, e.g.*, Rule 5A:18; *Neal*, 15 Va. App. at 422. Appellant's attempt to invoke the "good cause" exception in his reply brief is inconsequential because he did not raise that exception in his opening brief, as required by Rule 5A:20(e). *See Jeter*, 44 Va. App. at 740-41. Consequently, this Court does not address the merits of appellant's claim.

"Except as otherwise provided by other evidentiary principles, statutes or Rules of Court, a complaining witness in a sexual assault case may be cross-examined about prior false accusations of sexual misconduct." Va. R. Evid. 2:608(e).

As an initial matter, for prior allegations of sexual assault to be admissible under Rule 2:608(e), "the trial judge must 'make[] a threshold determination that a reasonable probability of falsity exists.'" *Hicks*, 71 Va. App. at 276 (alteration in original) (quoting *Clinebell v. Commonwealth*, 235 Va. 319, 325 (1988)). "Only if the judge makes such a determination, by a preponderance of the evidence, may the party make further inquiry." *Id.*[25] "Otherwise, a 'mini-trial' would take place 'to determine if each incident actually occurred.'" *Roadcap v. Commonwealth*, 50 Va. App. 732, 740 (2007) (quoting *State v. Le Clair*, 730 P.2d 609, 616 (Ore. App. 1986)).[26]

Moreover, by looking at the cases in which Virginia courts have analyzed and applied Rule 2:608(e), it is clear that the exception for "prior false accusations" supersedes Rule 2:608(b)'s prohibition on specific instances of untruthfulness *only* when a complaining witness has falsely alleged that she herself was a victim of a sexual assault not charged in the current

---

[25] *See, e.g.*, *Clinebell*, 235 Va. at 325 (finding "a reasonable probability of falsity" as to the complaining witness's "claims of sexual misconduct against [her] grandfather and [her] uncle" "[i]n light of her obviously false claims of pregnancy"); *Clifford v. Commonwealth*, 274 Va. 23, 24 (2007) (finding a "lack of proof that [the victim's] accusation of the baby-sitter had been false[]" because "the mere fact that the baby-sitter had been acquitted did not establish a 'reasonable probability of falsity' as required by *Clinebell*; it showed only that the Commonwealth had failed to prove the baby-sitter's guilt beyond a reasonable doubt"). In the case at hand, the trial court did not make a factual finding regarding the "probability of falsity" of K.I.C.'s allegation to the police.

[26] "A mere assertion of falsity (even by the alleged prior abuser) does not lay a satisfactory foundation." *Roadcap*, 50 Va. App. at 740. "Prior *truthful* accusations, after all, simply reveal the unfortunate, but irrelevant, fact that the alleged victim has been victimized before. They bolster -- not impeach -- a witnesses' credibility." *Id.* "And prior statements that may or may not be truthful neither bolster nor impeach the witness and, thus, should be excluded as irrelevant." *Id.*

proceeding. This principle of personal harm is integral to the purpose of the exception itself, and thus distinct from other specific instances of untruthfulness prohibited by Rule 2:608(b). *See Roadcap*, 50 Va. App. at 740. Indeed, this Court has acknowledged that

> [t]he reason underlying the general rule prohibiting evidence of specific acts of untruthfulness "is that the admission of evidence of specific acts, and the rebuttal evidence which would follow, injects collateral issues into the case which would divert the jury's attention from the real issue, the guilt or innocence of the accused."

*Lambert v. Commonwealth*, 9 Va. App. 67, 71 (1989) (quoting *Wynne*, 216 Va. at 356-57).[27] That the complaining witness was the target of the previously alleged sexual abuse is, therefore, an inherent element required by Rule 2:608(e).

Here, without explicitly ruling on the "probability of falsity" of the prior accusation, the trial court agreed with the Commonwealth's reading of *Clinebell* that the exception under Rule 2:608(e) applies only to prior instances of sexual assault the complainant alleges happened to herself, as opposed to others. Because the allegation here involved a claim of sexual assault against Ester instead of K.I.C., the trial court correctly prohibited appellant's proposed inquiry into this specific collateral matter for purposes of impeaching K.I.C.'s credibility. In contrast, the trial court correctly permitted appellant to ask whether K.I.C. had previously accused a different relative other than appellant "of having sex with [her] in El Salvador[.]"[28] This Court, therefore, affirms the trial court's determination that appellant's general questioning about whether K.I.C. had ever told a lie was improper under Rule 2:608 as was his attempt to inquire about K.I.C.'s prior claim that appellant had sexually abused her cousin, Ester.

---

[27] "The general rule prevents cross-examination as to collateral facts designed to lay a foundation to contradict the witness later by means of extrinsic evidence." *Lambert*, 9 Va. App. at 71.

[28] After K.I.C. denied making that accusation, appellant later presented contradictory evidence through the testimony of other family members.

### ii. *"Escape" from Foster Care to Return Home*

Appellant also attempted to question K.I.C. "regarding her escape from foster care and return to her mother's home, despite [K.I.C.]'s allegation that her mother was directly involved in her uncle's alleged sexual abuse of her[.]" Appellant argues that "such evidence was relevant to [K.I.C.]'s credibility." The trial court disagreed.

"It is a fundamental principle of jurisprudence that evidence which is not relevant is not admissible." *Perry v. Commonwealth*, 61 Va. App. 502, 509 (2013) (quoting *McMillan v. Commonwealth*, 277 Va. 11, 22 (2009)). "The proponent of the evidence bears the burden of establishing . . . the facts necessary to support its admissibility." *Church v. Commonwealth*, 71 Va. App. 107, 122 (2019) (alteration in original) (quoting *Perry*, 61 Va. App. at 509). Appellant proffered that the excluded evidence was relevant because "they've painted the mother as a monster by the police. But I know that [K.I.C.] escaped and went back to her mother's apartment." Not only was this purported evidence chronologically distanced from the sexual assaults that occurred in 2019 and 2020, but it also had no relevance to K.I.C.'s allegations against appellant. Maritza was not on trial for her alleged role in K.I.C.'s ongoing abuse at appellant's hands.

Because K.I.C.'s purported "escape" from foster care to reunite with her mother had no tendency to prove *appellant's* guilt or innocence of the charged offenses, the trial court did not abuse its discretion in excluding such evidence. Furthermore, that evidence would, at most, be merely cumulative of appellant's extensive challenges to K.I.C.'s credibility throughout trial. Indeed, appellant thoroughly questioned K.I.C. about her relationship with her mother, both generally and regarding her mother's alleged facilitation of appellant's sexual abuse.

Appellant also successfully introduced evidence—photographs taken in Texas and in Alexandria as well as a Mother's Day letter—that he argued to the jury showed a happy and

loving relationship between K.I.C. and Maritza during the relevant period of appellant's alleged abuse. The only evidence the trial court excluded as irrelevant was appellant's line of questioning about K.I.C. "escaping" from foster care and returning to her mother's apartment after she had been removed by CPS in March 2020. Even if made in error, which this Court does not find, the trial court's preclusion of such questioning would not warrant reversal where appellant's "right [of] cross-examin[ation] ha[d] been fairly and substantially exercised." *Maynard*, 11 Va. App. at 444 (quoting *Williams*, 4 Va. App. at 78).

Assignment of Error IX: Appellant's Second Motion to Set Aside the Jury Verdict

Lastly, appellant contends that the trial court should have granted his second motion to set aside the verdict based on "new evidence" introduced at his sentencing hearing through K.I.C.'s victim impact statement. He specifically emphasizes that K.I.C.'s multiple descriptions of physical force in her victim impact statement constitute either "new allegations" or statements "wholly inconsistent with her trial testimony that no physical force was used against her." According to appellant, those statements constituted "crucial impeachment material" necessitating a new trial. Given the strict standard governing motions involving claims of newly-discovered evidence, this Court finds that appellant's arguments fall short of the requirements for granting a new trial.

I. Standard of Review

"Motions for new trials based upon after-discovered evidence are addressed to the sound discretion of the trial judge, are not looked upon with favor, are considered with special care and caution, and are awarded with great reluctance." *Johnson v. Commonwealth*, 41 Va. App. 37, 43 (2003) (quoting *Odum v. Commonwealth*, 225 Va. 123, 130 (1983)). The moving party bears the burden of producing and then proving that the newly discovered evidence "justif[ies] an

evidentiary hearing or a new trial." *Id.* at 44. To satisfy this standard, the movant must establish that the evidence

> (1) appears to have been discovered subsequent to the trial; (2) could not have been secured for use at the trial in the exercise of reasonable diligence by the movant; (3) is not merely cumulative, corroborative or collateral; and (4) is material, and such as should produce opposite results on the merits at another trial.

*Orndorff v. Commonwealth*, 279 Va. 597, 602 (2010) (quoting *Odum*, 225 Va. at 130).

In determining whether those four elements have been proven, "'the court's role resembles that of a fact finder'" and this Court "may not substitute its own judgment of the record, but must [instead] defer to the [trial] court which had the opportunity to assess the credibility of the witnesses and was in the best position to determine the weight to be accorded the evidence." *Id.* at 604-05 (quoting *Orndorff v. Commonwealth*, 271 Va. 486, 505 (2006)). The trial court's ruling on such motions will thus "not be reversed [on appeal] absent an abuse of discretion." *Johnson*, 41 Va. App. at 43.

II. The Trial Court Did Not Err in Denying Appellant's Second Motion to Set Aside the Jury Verdict

Appellant asserts that the information contained in K.I.C.'s victim impact statement "constituted new [and material] evidence" because it raised new allegations against appellant and was inconsistent with K.I.C.'s "trial testimony on a key element of the rape charge." Specifically, K.I.C.'s statements about appellant forcibly raping her, including threatening her mother's life with a gun, "directly contradicted her trial testimony on issues directly related to the allegations of rape and how it was accomplished, the use of force or lack thereof, and the allegations of threats and intimidation and at whom they were directed and by whom." Appellant argues that such evidence was "crucial impeachment material" that was "not merely cumulative, corroborative or collateral" to his convictions.

- 43 -

The trial court rejected those claims below, finding that the "distinction . . . fatal to the defendant's request for a new trial" was that the information in the victim impact statement was not material as required under the law.[29] "To prove materiality, a defendant must show that the new evidence 'should produce opposite results on the merits at another trial.'" *Bondi*, 70 Va. App. at 93 (quoting *Odum*, 225 Va. at 130); *see also Johnson*, 41 Va. App. at 44 ("Before setting aside a verdict, the trial court must have evidence before it to show in a clear and convincing manner 'as to leave no room for doubt' that the after-discovered evidence, if true would produce a different result at another trial." (quoting *Carter v. Commonwealth*, 10 Va. App. 507, 513 (1990))). It is well established that "after-discovered evidence merely impeaching a witness is generally not grounds for a new trial," in part because additional evidence of inconsistent statements is simply cumulative to attacks made against the witness's credibility during trial. *Bondi*, 70 Va. App. at 93. This is particularly true in the case at hand where appellant presented extensive evidence challenging K.I.C.'s credibility at trial, including testimony from family members that K.I.C. had previously made and then recanted allegations of sexual assault against appellant in El Salvador.

As discussed above, inconsistent statements do not render a witness's testimony inherently incredible. *See, e.g.*, *Kelley*, 69 Va. App. at 626. Consequently, new impeachment evidence is usually immaterial because it is unlikely to "produce opposite results on the merits at another trial." *Bondi*, 70 Va. App. at 93 (quoting *Odum*, 225 Va. at 130). Therefore, "newly-discovered evidence which merely discredits, contradicts, or generally impeaches a

---

[29] As the trial court also noted, much of "the evidence . . . was in the hands of both counsel prior to trial," and thus not properly categorized as after-discovered evidence. "The application for a new trial must set forth in affidavits facts showing what efforts were made to obtain the evidence and explaining why those efforts were to no avail." *Mundy v. Commonwealth*, 11 Va. App. 461, 483 (1990). The trial court further opined that if "there are things that are bad, but she wasn't asked about them [by either counsel] who both knew about it[,] [w]as that a tactical decision or does that mean she's a liar?"

witness is not a basis for granting a new trial." *Mundy v. Commonwealth*, 11 Va. App. 461, 481 (1990); *see also Moore v. Commonwealth*, 186 Va. 453, 464 (1947) ("The evidence relied on must, among other things, go to the merits, and not merely impeach the character of a former witness.").[30]

For newly-discovered impeachment evidence to overcome the materiality hurdle, "[t]here must be *clear and convincing proof that the witness testified falsely at the trial*, and not merely proof that by reason of conflicting statements his testimony is unworthy of belief." *Mundy*, 11 Va. App. at 481 (quoting *Fout v. Commonwealth*, 199 Va. 184, 192 (1957)). Appellant has failed to establish that K.I.C.'s post-trial statements meet that materiality threshold because they do not sufficiently "show that the verdict was based on mistaken or perjured testimony[.]" *Powell v. Commonwealth*, 133 Va. 741, 752 (1922). Unlike many other cases involving such issues, K.I.C.'s post-trial statements are not recantations of her trial testimony nor are they otherwise plainly exculpatory.[31] Merely arguing that they *might* have affected the jury's assessment of K.I.C.'s credibility, if discovered during trial, does not warrant a new trial here in

---

[30] Although this Court has recognized that a motion for a new trial "*may* be granted if the witness to be impeached [by the newly-discovered evidence] is the 'key prosecution witness[,]'" such permissive exception to the rule remains within the discretion of the trial court. *Bondi*, 70 Va. App. at 93 (emphasis added). And "a defendant must still establish that the [impeachment] evidence is 'material to the extent that the outcome of the trial would have been affected.'" *Id.* (quoting *Lamm v. Commonwealth*, 55 Va. App. 637, 645 (2010)).
Furthermore, this exception has only been applied in cases where the witness's newly-discovered statements are exculpatory on their face. *See id.*; *Whittington v. Commonwealth*, 5 Va. App. 212, 216 (1987) (granting new trial where rape conviction was based solely on the victim's testimony and defendant discovered after trial that victim had made pre-trial statements denying that the crime ever occurred). K.I.C.'s statements are the opposite; she attributes additional bad acts to appellant rather than recanting any of her trial testimony.

[31] *See Powell*, 133 Va. at 757-58 (justifying a new trial where "the newly discovered evidence indicates the existence of a purpose on the part of the widow to procure the conviction of the accused *upon fabricated evidence* [of self-defense]" because removal of the false testimony in a new trial "ought to produce . . . an opposite result on the merits" (emphasis added)).

the absence of "clear and convincing proof" that she "testified falsely at the trial." *Fout*, 199 Va. at 192 (quoting *Lewis v. Commonwealth*, 193 Va. 612, 625 (1952)).

This Court has even held that a clear recantation "is insufficient to justify post-conviction relief" "[w]here the evidence merely proves that the witness made conflicting statements and, therefore, 'spoke falsely on one occasion[.]'" *In Re Carpitcher*, 47 Va. App. 513, 527 (2006) (quoting *Lewis*, 193 Va. at 626).[32] Here, K.I.C.'s post-trial statements "do[ ] not, standing alone, 'establish that [her] testimony at the trial was false and the statements in the subsequent affidavit were true.'" *Id.* (quoting *Lewis*, 193 Va. at 626). To the contrary, the record raises several logical inferences as to why K.I.C.'s victim impact statement might differ from her trial testimony despite both sets of statements being true.[33] Frankly, it is more difficult to comprehend why the difference would exist at all if both sets of statements were fabricated, as

---

[32] *See also Fout*, 199 Va. at 192 ("While discovery after trial, brought to the attention of the court in due time, that false testimony with respect to material facts has been given by a witness for the prosecution may constitute ground for a new trial, recantation by a State's witness does not necessarily entitle the accused to a new trial." (quoting *Lewis*, 193 Va. at 625)).

[33] Regarding the threat to Maritza, K.I.C. testified to multiple other reasons why she didn't take the initiative to report her uncle's assaults or say no to him in the privacy of their home. She explained that she was isolated in a new country, that she was fearful that her family would side with her abusers, that appellant had threatened she would never see her grandmother again, and that she was trying to protect R.I. It would not be unreasonable to believe there were other circumstances that contributed to K.I.C. feeling like she had no choice but to submit to appellant's abuse. Perhaps those memories seemed so insignificant by comparison that she neglected to mention them. Perhaps reliving the trauma every time she had to tell the story again caused her brain to bury some of those memories in an attempt to protect her conscious mind. Perhaps she didn't process the entirety of appellant's abusive actions until after the trial while thinking about what she wanted to say in the victim impact statement.

From another perspective, what if the gunpoint threat against her mother occurred outside of Virginia and she believed that her testimony was supposed to focus only on proving the charges that arose from appellant's actions in Virginia? That same question applies to K.I.C.'s statements about appellant's physical violence against her. The ultimate point in raising these suggestions, however, is to show that K.I.C.'s post-trial statements raise only speculative suppositions rather than a direct contradiction to her trial testimony let alone any proof of perjury.

appellant claims. Why would K.I.C. seek to convict appellant based on a lie that he raped her without physical force but then tell the opposite lie at sentencing?

Ultimately, however, such speculation about K.I.C.'s credibility in light of her post-trial statements is not an appropriate exercise of this Court's authority. "Application for a new trial is addressed to the sound discretion of the trial court which has the opportunity of seeing and hearing the witness whose testimony is brought under attack, and the prime duty of determining whether [s]he swore falsely at trial." *Mundy*, 11 Va. App. at 481 (quoting *Fout*, 199 Va. at 192). The record does not support a finding that the trial court plainly erred in refusing to set aside the jury's determinations of credibility and guilt. To the contrary, this Court finds "credible evidence in the record to support the findings of the trial judge[.]" *Id.* at 485. Accordingly, the trial court "did not abuse its discretion in finding that the [allegations]" in K.I.C.'s victim impact statement were "immaterial and therefore did not warrant a new trial." *Bondi*, 70 Va. App. at 93.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*